Yaw Yoobhis, J. (dissenting).
The rule excluding privileged communications between physician and patient, embodied in CPLB 4504 (subd. [a]) (formerly Civ. Prac. Act, § 352) is violated, as it seems to me, by admitting into evidence the package of heroin which fell out of the defendant’s sock when it was removed in order to bare the sole of his foot so that the doctor might administer the Babinski test. It is undisputed that the relationship of physician and patient existed, which was not destroyed by the presence in the room of other persons connected with the hospital. “ To say that in a hospital, where there is division of duties among the staff, the relation of physician and patient does not arise with regard to those members of the staff who do not actually treat the patient is unsound ” (People v. Decina, 2 N Y 2d 133, 142-143).
It is true that the statutory language provides that the physician shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, ‘ ‘ and which was necessary to enable him to act in that capacity. ’ ’ The discovery of the heroin in defendant’s sock was necessary to his neurological examination in order to treat him for the severe accidental injuries which he had received, since the heroin was in Ms sock and Ms sock had to be removed .to give the Babinski test. The reason for the statutory privilege has been often stated to be “ to protect those who are required to consult physicians from the disclosure of secrets imparted to them; to protect the relationship of patient and physician and prevent physicians from disclosing information which might result in humiliation, embarrassment or disgrace to patients ” (Steinberg v. New York Life Ins. Co., 263 N. Y. 45, 48-49), and to free patients from refraining to consult physicians of whose services, as in this instance, they may be in dire need (Edington v. Mutual Life Ins. Co., 67 N. Y. 185, 194). In the last case, it was said: “ To open the door to the disclosure of secrets revealed on the sick bed, or when consulting a physician, would destroy confidence between the physician and the patient, and, it is easy to see, might tend very much to prevent the advantages and benefits which flow from this confidential relationship ”. (Grattan v. Metropolitan Life Ins. Co., 80 N. Y. 281.)
In the present instance, standard medical practice called for the administration of the Babinski test, which could only be performed by removing this man’s sock. He himself was help *673 less from his injuries, and being subjected to prosecution on this criminal charge should not have been exacted of him as an alternative to foregoing the necessary medical and surgical attention. In Nelson v. Village of Oneida (156 N. Y. 219 [approved in Klein v. Prudential Ins. Co., 221 N. Y. 449, 454]) it was held that the physician-patient privilege extends to the nondisclosure of information which is not required for diagnosis or treatment, but which was learned by the physician as a necessary incident to rendering professional service. The following sentence was quoted at page 223 from Edington v. Ætna Life Ins. Co. (77 N. Y. 564): “ ‘ The policy of the statute is to enable a patient, without danger of exposure, to disclose to his physician all information necessary for his treatment.’ ”
In 8 Wigmore, Evidence (1961 ed., § 2384) it was said: “ Communications are the subject of the protection. But communications may be made by exhibition or by submission to inspection, as well as by oral or written narration or utterance. The invitation to the physician to prescribe assumes that he will first obtain the data for the prescription; and since the usual method of obtaining these involves the physician’s own observation as well as the patient’s narration, the invitation to prescribe is an implied communication of all the data which the physician may by any method seek to obtain as necessary for the prescription.”
It is true that there are cases where doctors have been allowed to testify to such nonprofessional matters as where a patient volunteers details of an accident, entirely unrelated to treatment (Griffiths v. Metropolitan St. Ry. Co., 171 N. Y. 106; People v. Decina, supra, p. 143) or to facts such as a layman might observe which are not induced by the professional relationship (Klein v. Prudential Ins. Co., 221 N. Y. 449), but that is not the situation here. The purpose of the privilege is denied if professional diagnosis and treatment could only be obtained by this badly injured man under penalty of disclosure of this evidence of crime.
Subdivision 2 of section 3304 of the Public Health Law is not mentioned as the basis for the majority ruling, nor does it appear to me to be applicable.
The judgment of conviction should be reversed because the evidence showing guilt was privileged.
Judgment affirmed.